**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **SYLVIA KOMORSKI, Individually and** ) <br> **on behalf of similarly situated individuals,** ) <br> ) <br> **Plaintiff,** ) <br> **v.** ) <br> ) <br> **OHM CONCESSION GROUP, LLC;** ) <br> **OHM CHICAGO, LLC; GLOBAL** ) <br> **PAYMENTS, INC.; AND CROSS** ) <br> **MATCH TECHNOLOGIES, INC.,** ) <br> ) <br> **Defendants.** ) | **Case No. 1:19-cv-00157** |

**INDEX OF EXHIBITS**

| Exhibit | Description |
|---|---|
| 1. | Group Exhibit containing the following documents: <br><br> • Agreed Order Granting Plaintiff Leave To File Her Third Amended Class Action Complaint, <u>Instanter</u> (December 10, 2018) <br><br> • Third Amended Class Action Complaint & Jury Demand (December 10, 2018) <br><br> • Order Setting Status Hearing for February 4, 2019 (December 17, 2018) <br><br> • Agreed Order for Extension of Time (January 4, 2019) |
| 2. | December 10, 2018 Correspondence from Jad Sheikali to Kathleen Lally |
| 3. | Florida Secretary of State Record |

# GROUP EXHIBIT 1

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| SYLVIA KOMORSKI, individually and )<br>on behalf of similarly situated )<br>individuals, )<br> )<br>    *Plaintiff*, )<br> )<br>            v. )<br> )<br>OHM CONCESSION GROUP, LLC, an )<br>Illinois limited liability company; OHM )<br>CHICAGO, LLC, an Illinois limited )<br>liability company; GLOBAL )<br>PAYMENTS, INC., a Georgia )<br>corporation; and HID GLOBAL )<br>CORPORATION, a Delaware )<br>corporation, )<br> )<br>    *Defendants.* ) | No. 2017-CH-12838<br><br>Hon. Pamela Meyerson |

## AGREED ORDER GRANTING PLAINTIFF LEAVE TO FILE HER THIRD AMENDED CLASS ACTION COMPLAINT, *INSTANTER*

This matter, coming before the Court by agreement of Plaintiff Sylvia Komorski, Defendants OHM Concession Group, LLC, OHM Chicago, LLC (the "OHM" Defendants), and Cross Match Technologies, Inc. ("Cross Match"), improperly named as HID Global Corporation ("HID Global"), and the Court being fully advised and for good cause shown:

## RECITALS

1. On November 9, 2018, Plaintiff filed her Second Amended Class Action Complaint ("SAC") adding HID Global as a Defendant in this action.

2. On December 4, 2018, counsel for Plaintiff learned that HID Global is the parent corporation of the entity Plaintiff sought to add to her SAC, Cross Match.

3.      Plaintiff seeks leave to amend her Complaint to substitute Cross Match in as Defendant for Defendant HID Global.

4.      On December 5, 2018, counsel for Plaintiff informed counsel for Cross Match and the OHM Defendants of Plaintiff's intent to amend her Complaint to substitute Cross Match for HID Global and provided a copy of the proposed amended Complaint.

5.      On December 5, 2018, counsel for Cross Match and the OHM Defendants agreed to Plaintiff's filing of her Third Amended Complaint.

6.      Further, Defendant Global Payments, Inc. ("Global Payments") was served on November 21, 2018 and has yet to appear. Global Payment's appearance is due on December 21, 2018. The proposed Amendment will not prejudice or otherwise impact Global Payments, as Plaintiff is merely substituting in the proper entity for HID Global.

7.      Plaintiff will provide a copy of this Agreed Order and her Third Amended Complaint to the registered agent for Defendant Global Payments via FedEx.

8.      This Agreed Order is brought in good faith and not for any impermissible purpose or to cause unnecessary delay.

2

**IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Third Amended Complaint is to be filed *instanter*;

2. Defendant HID Global Corporation is hereby Dismissed without prejudice as to Plaintiff and the putative class members;

3. Defendant Cross Match Technologies, Inc.'s Responsive Pleading to Plaintiff's Third Amended Complaint is due on or before January 25, 2019;

4. Plaintiff is to provide a copy of this Order and her Third Amended Complaint to the registered agent for Defendant Global Payments, Inc.;

5. The OHM Defendants' Responsive Pleading is continued until after the anticipated mediation in early 2019; and

6. The status hearing currently set for December 17, 2018, at 10:15 a.m. Stands.

ENTER:          Judge Pamela McLean Meyerson

DEC 18 2018

Dated:_____          _____Circuit Court—2097

Hon. Pamela Meyerson

3

Prepared by:

Jad Sheikali
MCGUIRE LAW, P.C. (#56618)
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
jsheikali@mcgpc.com

*One of the Attorneys for Plaintiff and the Putative Class*

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
12/10/2018 11:59 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2017CH12838

FILED DATE: 12/10/2018 11:59 AM   2017CH12838

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| SYLVIA KOMORSKI, individually and on behalf of similarly situated individuals, ) ) ) | |
| *Plaintiff*, ) | No. 2017-CH-12838 |
| ) | |
| v. ) | |
| ) | Hon. Pamela Meyerson |
| OHM CONCESSION GROUP, LLC, an Illinois limited liability company; OHM CHICAGO, LLC, an Illinois limited liability company; GLOBAL PAYMENTS, INC., a Georgia corporation; and CROSS MATCH TECHNOLOGIES, INC., a Delaware corporation, ) ) ) ) ) ) ) ) ) | |
| ) | |
| *Defendants*. ) | |

---

### THIRD AMENDED CLASS ACTION COMPLAINT & JURY DEMAND

Plaintiff Sylvia Komorski ("Plaintiff"), individually and on behalf of other similarly situated individuals, brings her Third Amended Class Action Complaint against Defendant OHM Concessions Group, LLC, Defendant OHM Chicago, LLC (collectively "OHM"), Defendant Global Payments, Inc. d/b/a Heartland Payment Systems ("Heartland"), and Cross Match Technologies, Inc. ("Cross Match") (collectively, "Defendants")[1], for their violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* (the "BIPA"), and to obtain redress for all persons injured by their conduct. Plaintiff alleges as follows based on personal knowledge as to her own acts and experiences, and as to all other matters, upon information and belief, including an investigation conducted by her attorneys.

---

[1] Heartland and Cross Match may also be collectively referred to as the "Biometric Technologists."

FILED DATE: 12/10/2018 11:59 AM 2017CH12838

## INTRODUCTION

1.    BIPA defines a "biometric identifier" as any personal feature that is unique to an individual, including fingerprints and palm scans. "Biometric information" is any information based on a biometric identifier, regardless of how it is converted or stored. 740 ILCS § 14/10. Collectively, biometric identifiers and biometric information are known as "biometrics."

2.    This case concerns the misuse of individuals' biometric information by restaurant and concessions management companies OHM and their Biometric Technologists, Heartland and Cross Match. Defendants are capturing, storing, using, and/or disseminating the biometric information of Plaintiff, OHM employees, and hundreds or thousands of other workers throughout the state, without their informed written consent as required by law.

3.    OHM, using Heartland and Cross Match's biometric technology and associated services, captures, collects, and otherwise uses biometrics, including fingerprints. Heartland and Cross Match offer such technology to their various corporate and business clients, which in turn use the technology on individuals, such as Plaintiff.

4.    Biometric technology allows companies to reduce timekeeping fraud. Unfortunately, along with the increased utility of biometric technology, so too come grave privacy risks associated with the unauthorized or malicious dissemination of this information.

5.    The risk of harm is greatly magnified when biometrics are obtained in violation of reasonable regulations designed to protect individuals' irreplaceable information. The permanent nature of one's biometrics makes the illegal collection of the same a significant public problem with far-reaching consequences, including irreversible identify theft.

FILED DATE: 12/10/2018 11:59 AM   2017CH12838

6.      Recognizing the irreversible harm presented by allowing the unregulated collection and use of biometrics, Illinois passed the BIPA, a minimally-burdensome statute addressing the collection, use, retention, and dissemination of biometrics by private entities, such as Defendants.

7.      Under the BIPA, a biometric system, such as the system utilized by Defendants, is perfectly legal if, and *only if¸* the entity which operates such a system *first*:

(1)   informs the person whose biometrics are to be collected *in writing* that biometric identifiers or biometric information will be collected or stored;

(2)   informs the person whose biometrics are to be collected *in writing* of the specific purpose and the length of term for which such biometric identifiers or biometric information is being collected, stored and used;

(3)   receives a *written release* from the person whose biometrics are to be collected allowing the capture and collection of their biometric identifiers or biometric information; <u>and</u>

(4)   publishes publicly available retention guidelines for permanently destroying biometric identifiers and biometric information. 740 ILCS 14/15(a).

8.      Compliance with BIPA is straightforward and achievable through a single, signed sheet of paper. BIPA's requirements bestow upon individuals a right to privacy in their biometrics and a right to make an *informed* decision when electing to provide or withhold biometrics.

9.      At the time the BIPA was passed in 2008, another data privacy statute, the Personal Information Protection Act, 815 ILCS § 530 *et seq.* ("PIPA"), had been law in Illinois since 2006. PIPA provides a private right of action if a company possessing an individual's unique biometric data (the same data regulated by the BIPA) suffers a data security breach and fails to give affected

FILED DATE: 12/10/2018 11:59 AM   2017CH12838

consumers proper notice of such a breach. Further, numerous state and federal statutes, including the Illinois Consumer Fraud Act, also provide consumers a remedy in the event of an actual breach.

10.     Defendants' biometric timekeeping system works by extracting biometric information from individuals, such as fingerprints or portions thereof, and subsequently using the same for authentication and timekeeping purposes. The system includes the dissemination of biometrics to third parties, such as data storage services, payroll, or equipment vendors. The biometrics are stored and repeatedly used each time a worker "clocks in" or "out" on the job.

11.     The Illinois Legislature has found that "biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, even sensitive information like Social Security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to each individual and therefore, once compromised, such individual has no recourse, is at a heightened risk for identity theft in, and is likely to withdraw from biometric facilitated transactions." 740 ILCS 14/5. The risk is compounded when, like in the workplace context, a person's biometric information is also associated with his/her Social Security number and potentially other relevant financial information or personal identifiable information. The gravity of the unresolvable problems created in the event of a data breach is so severe that the unlawful collection of such information constitutes actual harm.

12.     Plaintiff brings this action for damages and other remedies resulting from the actions of Defendants in capturing, storing, using, and disseminating her biometrics, and those of hundreds or thousands of other individuals throughout the state of Illinois, without informed written consent, and without informing them through a publicly available policy of how and when the subject biometrics would be stored or disposed of, in direct violation of the Illinois BIPA.

FILED DATE: 12/10/2018 11:59 AM   2017CH12838

13.     Defendants failed to bargain honestly with their workers at the outset of the business relationships by failing to disclose the unlawful nature of the timekeeping system in which they would be required to participate; failing to obtain the necessary consent to disseminate their biometrics to third parties; failing to maintain a lawful biometric storage program which deletes biometric information in the proscribed period; failing to provide the required disclosures at the time of collection; and failing to provide a retention and destruction schedule.

14.     To the extent Defendants are still retaining Plaintiff's biometrics, such retention is unlawful. Plaintiff would not have provided her biometric data to Defendants had she known the same would remain with Defendants for an indefinite period or subject to unauthorized disclosure.

15.     On behalf of herself and the proposed Classes defined below, Plaintiff seeks an injunction requiring Defendants to comply with BIPA, as well as an award of statutory damages to the Class members and common law monetary damages to be determined at trial, together with costs and reasonable attorneys' fees.

## PARTIES

16.     Defendant OHM Concessions Group, LLC is an Illinois limited liability company that is registered with and authorized by the Illinois Secretary of State to transact business in Illinois, and is conducting business in Cook County, Illinois.

17.     Defendant OHM Chicago, LLC is an Illinois limited liability company that is registered with and authorized by the Illinois Secretary of State to transact business in Illinois, and is conducting business in Cook County, Illinois.

18.     Defendant Global Payments, Inc. d/b/a Heartland Payment Systems is a Georgia corporation. Defendant Heartland transacts business throughout Illinois and in Cook County.

FILED DATE: 12/10/2018 11:59 AM   2017CH12838

19.     Defendant Cross Match Technologies, Inc. is a Delaware corporation registered with and authorized by the Illinois Secretary of State to transact business in Illinois, and is conducting business in Cook County, Illinois.

20.     At all relevant times, Plaintiff has been a resident and citizen of the state of Illinois.

## JURISDICTION AND VENUE

21.     This Court may assert personal jurisdiction over Defendants because Defendants are doing business within this State and because Plaintiff's claims arise out of Defendants' unlawful in-state actions, as Defendants captured, converted, transferred, stored, and used Plaintiff's biometric identifiers and/or biometric information in this State, and because jurisdiction arising under 28 U.S.C. § 1332 exists with no exception satisfied.

22.     Venue is proper because Defendants are doing business in Cook County and, thus, reside there under § 2-102.

## FACTS SPECIFIC TO PLAINTIFF

23.     The Biometric Technologists, Heartland and Cross Match, are leading providers of biometrically-facilitated timekeeping, payroll, and employee management services to businesses like OHM.

24.     During the relevant time period, Plaintiff worked at restaurants owned and operated by OHM and located in Illinois.

25.     Defendant OHM uses, and relies on, biometric technology and associated services provided by Defendants Heartland and Cross Match to monitor and track its employees', including Plaintiff's, time.

26.     From the time Plaintiff started working at OHM, she was required to scan her fingerprints and/or other biometrics using Heartland and Cross Match's biometric technology systems each time she needed to "clock-in" and "clock-out." The Biometric Technologists ensured

6

FILED DATE: 12/10/2018 11:59 AM   2017CH12838

that Plaintiff could only verify her attendance and timeliness using their devices and technology. Both Heartland and Cross Match were aware that Plaintiff and other class members would be required to utilize the biometric timekeeping technology.

27.     Plaintiff relied on Heartland and Cross Match as the providers of the biometric technology to not only provide a lawful and legally compliant system, but to also disclose all material information regarding the technology and system, including retention, destruction, and dissemination policies.

28.     Heartland and Cross Match were aware, or reckless in failing to be aware, that customers and employees of their clients would be subject to the biometric technology and that their technology would be capturing, collecting, utilizing, and/or disseminating the biometrics of Plaintiff and the Class members.

29.     Heartland and Cross Match's biometric technology allows for and resulted in the dissemination of Plaintiff and other Class member's biometrics to third parties, including vendors for timekeeping, data storage, and payroll purposes.

30.     Prior to taking Plaintiff's biometrics through their biometric technology, Defendants did not inform Plaintiff in writing that her biometrics were being collected, stored, used, or disseminated, or publish any policy specifically about the collection, retention, use, deletion, or dissemination of biometrics. Defendants did not seek, and Plaintiff never provided, any written consent relating to the collection, use, storage, or dissemination of her biometrics.

31.     Prior to taking Plaintiff's biometrics, Defendants did not make publicly available any written policy as to a biometric retention schedule and guidelines for permanently destroying the collected biometrics.

FILED DATE: 12/10/2018 11:59 AM   2017CH12838

32.     Additionally, Defendants did not obtain consent from Plaintiff for any dissemination of her biometrics to third parties.

33.     To this day, Plaintiff is unaware of the status of her biometrics obtained by Defendants. Defendants have not informed Plaintiff whether they still retain her biometrics, and if they do, for how long they intend to retain such information without her consent.

34.     Plaintiff has suffered pecuniary damages in the form of lost wages, diminution in the unique identifying value of her biometrics, and other costs associated with identity protection.

35.     Furthermore, Plaintiff's biometrics are economically valuable and such value will increase as the commercialization of biometrics continues to grow. Defendants' repeated use of Plaintiff's biometrics does and will continue to confer a benefit on Defendants for which Plaintiff was not sufficiently compensated.

36.     At the time Plaintiff's biometrics were captured, Defendants did not have a publicly available policy of informing individuals, including Plaintiff, of what happens to their biometrics after they are captured, to which third parties the information is disseminated, and what would happen to the data if Defendants were to be acquired or file bankruptcy.

37.     Plaintiff experiences mental anguish and injury when she thinks about the status of her biometrics and who has, or could have, access to such private information; what would happen to her biometrics if Defendants or their clients went bankrupt or otherwise sold their assets; whether Defendants will ever delete her biometric information; what would happen if Defendants or their clients were to experience a data breach; and how any such breach would result in irreparable harm to her identity. This harm is even more acute because an individual with access to Plaintiff's biometrics could potentially access other financial accounts or health records which may currently, or at some time in the future, be secured through her biometrics.

FILED DATE: 12/10/2018 11:59 AM   2017CH12838

38.     By failing to comply with BIPA, Defendants have violated Plaintiff's substantive state rights to biometric information privacy.

## CLASS ALLEGATIONS

39.     Plaintiff brings this action on behalf of herself and similarly situated individuals pursuant to 735 ILCS § 5/2-801. Plaintiff seeks to represent a Classes and Subclass ("Class," unless otherwise noted) defined as follows:

> **Heartland Class**: All individuals whose biometrics were captured, obtained, stored or used by Heartland within the state of Illinois any time within the applicable limitations period.
>
> **Cross Match Class**: All individuals whose biometrics were captured, obtained, stored or used by Cross Match within the state of Illinois any time within the applicable limitations period.
>
> **OHM Subclass**: All OHM employees whose biometrics were captured, collected, stored, used, transmitted, or disseminated by or on behalf of Defendants within the state of Illinois any time within the applicable limitations period.

40.     Excluded from the Class are any members of the judiciary assigned to preside over this matter; any officer or director of Defendants; and any immediate family member of such officer or director.

41.     Upon information and belief, there are thousands of members of the Class, making the members of the Class so numerous that joinder of all members is impracticable. Although the exact number of members of the Class is currently unknown to Plaintiff, the members can be easily identified through Defendants' personnel records.

42.     Plaintiff's claims are typical of the claims of the Class members she seeks to represent, because the factual and legal bases of Defendants' liability to Plaintiff and the other Class members are the same, and because Defendants' conduct has resulted in similar injuries to

FILED DATE: 12/10/2018 11:59 AM   2017CH12838

Plaintiff and to the Class. As alleged herein, Plaintiff and the other putative Class members have all suffered damages as a result of Defendants' BIPA violations.

43.     There are many questions of law and fact common to the claims of Plaintiff and the other Class members, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to, the following:

    a.    Whether Defendants collect, capture, store, or use the biometrics of Class members;

    b.    Whether Defendants developed and made available to the public a written policy which establishes a retention schedule and guidelines for permanently destroying biometric identifiers and information as required by the BIPA;

    c.    Whether Defendants obtained a written release from Class members before capturing, collecting, or otherwise obtaining workers' biometrics;

    d.    Whether Defendants provided a written disclosure to their workers that explains the specific purposes, and the length of time, for which their biometrics were being collected, stored and used before taking their biometrics;

    e.    Whether Defendants' conduct violates the BIPA;

    f.    Whether Defendants' violations of the BIPA are willful and reckless; and

    g.    Whether Plaintiff and the Class members are entitled to damages and injunctive relief.

44.     Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitively expensive and would have no effective remedy. The class treatment

FILED DATE: 12/10/2018 11:59 AM   2017CH12838

of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

45.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class she seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class.

46.     Defendants have acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

**<u>COUNT I</u>**
**Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.*,**
**(On behalf of Plaintiff and the Class)**

47.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

48.     Defendants are private entities under BIPA.

49.     BIPA requires private entities, such as Defendants, to obtain informed written consent from individuals before acquiring their biometric information. Specifically, BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of for which a

FILED DATE: 12/10/2018 11:59 AM   2017CH12838

biometric identifier or biometric information is being captured, collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b).

50.     Illinois' BIPA also requires that private entities in possession of biometric identifiers and/or biometric information establish and maintain a publicly available retention policy. Entities which possess biometric identifiers or information must (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric information (entities may not retain biometric information longer than three years after the last interaction with the individual); and (ii) adhere to the publicly posted retention and deletion schedule.

51.     Plaintiff and the other Class members have had their "biometric identifiers," namely their fingerprints, collected, captured, received or otherwise obtained by Defendants. Plaintiff and the other Class members' biometric identifiers were also used to identify them, and therefore constitute "biometric information" as defined by BIPA. 740 ILCS 14/10.

52.     Each instance Plaintiff and the other Class members had their fingerprints scanned into Defendants' biometric devices, Defendants captured, collected, stored, and/or used Plaintiff's and the other Class members' biometric identifiers or biometric information without valid consent and without complying with and, thus, in violation of BIPA.

53.     Defendants' practice with respect to capturing, collecting, storing, and using biometrics fails to comply with applicable BIPA requirements:

    a.     Defendants failed to inform Plaintiff and the members of the Class in writing that their biometrics were being collected and stored, prior to such collection or storage, as required by 740 ILCS 14/15(b)(1);

12

FILED DATE: 12/10/2018 11:59 AM   2017CH12838

b.    Defendants failed to inform Plaintiff and Class in writing of the specific purpose for which their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

c.    Defendants failed to inform Plaintiff and the Class in writing the specific length of term their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

d.    Defendants failed to obtain a written release, as required by 740 ILCS 14/15(b)(3);

e.    Defendants failed to provide a publicly available retention schedule detailing the length of time for which the biometrics are stored and/or guidelines for permanently destroying the biometrics they store, as required by 740 ILCS 14/15(a); and

f.    Defendants failed to obtain informed consent to disclose or disseminate the Class' biometrics, as required by 740 ILCS 14/15(d)(1).

54.    By designing and operating an employee timekeeping system which uses biometrics that was devoid of the privacy protections required by BIPA, Defendants Heartland and Cross Match, the Biometric Technologists, profited from Plaintiff's and the Class members' biometric identifiers and biometric information in violation of 740 ILCS 14/15(c). Heartland and Cross Match knew, or were reckless in not knowing, that their biometric systems and technology would be subject to the provisions of BIPA yet wholly failed to comply with the statute.

55.    By capturing, collecting, storing, using, and disseminating Plaintiff's and the Class' biometrics as described herein, Defendants denied Plaintiff and the Class their right to statutorily-

13

FILED DATE: 12/10/2018 11:59 AM   2017CH12838

required information and violated their respective rights to biometric information privacy, as set forth in the BIPA.

56.     Had Defendants informed Plaintiff that she was not being provided with the required information regarding her biometrics and the biometric timekeeping program it was providing as required by law, or that the biometric technology it was providing was not legally compliant, she would not have worked in the subject employment conditions or agreed to provide her biometrics without additional compensation.

57.     Further, had Defendants provided Plaintiff with all required disclosures, she at least would have been able to make an informed decision concerning material facts of the work environment, including whether the rate of pay and opportunity cost justified participating in the biometric timekeeping program.

58.     BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of the BIPA and, alternatively, damages of $1,000 for each negligent violation of the BIPA. 740 ILCS 14/20(1).

59.     Defendants' violations of the BIPA, as set forth herein, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendants negligently failed to comply with BIPA.

60.     With respect to Count I, Plaintiff, on behalf of herself and the proposed Class, prays for (i) a declaration that Defendants' actions violate BIPA; (ii) an award of injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with the BIPA requirements for the capture and collection of biometrics, as well as requiring Defendants to comply with the written retention policy requirements of 740 ILCS 14/15(a); (iii) statutory damages of $5,000 for each willful and/or reckless violation of BIPA,

FILED DATE: 12/10/2018 11:59 AM   2017CH12838

pursuant to 740 ILCS 14/20(1); (iv) statutory damages of $1,000 for each negligent violation of BIPA, pursuant to 740 ILCS 14/20(3); and (v) reasonable attorneys' fees, costs, and other litigation expenses pursuant to 740 ILCS 14/20(3).

## COUNT II
### Fraudulent Inducement by Omission
### (On behalf of Plaintiff and the Class)

61.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

62.     At all times, Defendants were in complete control of both the information and access to information related to their biometric timekeeping program and technology, and the work environment, conditions, and requirements Plaintiff and the Class were required to follow.

63.     Because Defendants were in control of all information regarding the work environment and the biometric technology, and in light of their respective relative relationships with Plaintiff, special relationships existed between Defendants and Plaintiff and the Class, respectively, whereby Defendants had a duty to disclose all material information, and certainly all legally and statutorily required material information, concerning the work environment.

64.     Additionally, a special relationship and duty existed between Heartland and Cross Match, the Biometric Technologists, and Plaintiff and the Class as a result of Heartland and Cross Match's control and knowledge regarding both the biometric technology and that Plaintiff and the Class would be required to scan their biometrics into such technology.

65.     Due to the relationship between Defendants and Plaintiff and the Class, Defendants were obligated to disclose information regarding the biometric program.

66.     Defendants, in seeking to benefit, and even profit, from utilizing Plaintiff's biometrics, *i.e.* her fingerprints, while also avoiding compliance with BIPA and obtaining labor services from Plaintiff, failed to provide Plaintiff and the other Class members with the mandatory

FILED DATE: 12/10/2018 11:59 AM   2017CH12838

disclosures or abide with the written consent provisions of BIPA. Plaintiff, in her position of limited power and knowledge relative to Defendants, relied on Defendants' representations in executing material workplace decisions.

67.     Defendants knew, or were reckless in not knowing, that their biometric timekeeping program was not legal and fraudulently induced Plaintiff and the Class to accept and/or continue working by omitting such material information; by denying them the right to provide informed consent for participation in the biometric timekeeping program and the collection and use of their respective biometrics; and by failing to disclose the fact that their biometrics would be taken and disseminated without their legal consent.

68.     Plaintiff and the Class were fraudulently induced by Defendants' material omissions into engaging in work relationships on such terms that would not have existed but for such intentional omissions of material fact.

69.     Accordingly, with respect to Count II, Plaintiff, or behalf of herself and the proposed Class, prays for an award of actual, compensatory and punitive damages in amounts to be determined at trial.

### COUNT III
**Breach of Express Contract**
**(On behalf of Plaintiff and the Class)**

70.     Plaintiff hereby incorporates the foregoing allegations as if fully set forth herein.

71.     Plaintiff and the Class members entered into express agreements with OHM to provide restaurant and concession labor services in exchange for, and with the understanding that they would receive, a legally compliant work environment.

72.     These agreements were subject to implied covenants of good faith and fair dealing because Defendants had broad discretion in how to perform their duties and obligations.

16

FILED DATE: 12/10/2018 11:59 AM   2017CH12838

73.     Plaintiff and the Class performed all conditions, covenants, obligations, and promises owed to Defendants, including working when required and providing ADP their sensitive and confidential biometrics.

74.     As a result of Defendants' breaches of contract and the covenant of good faith and fair dealing, Plaintiff and the Class members did not receive the full benefit of their bargain.

75.     Plaintiff and the Class have also suffered actual damages resulting from the dissemination and exposure of their biometrics to third parties and remain at risk of suffering additional damages in the future.

76.     Plaintiff and the Class were damaged in an amount at least equal to the difference in value between that which they reasonably expected and Defendants' partial, deficient and/or defective performance.

77.     Plaintiff and the Class have also suffered actual damages resulting from their attempts to ameliorate the effect of the breach.

78.     Accordingly, with respect to Count III, Plaintiff, or behalf of herself and the proposed Class, prays for an award of actual and compensatory damages incurred as a result of Defendants' breach of contract, in amounts to be determined at trial.

### COUNT IV
**Breach of Express Contract Implied-in-Fact**
**(On behalf of Plaintiff and the Class and in the alternative to Count III)**

79.     Plaintiff hereby incorporates the foregoing allegations as if fully set forth herein.

80.     Plaintiff and the Class members entered into express agreements with OHM to provide restaurant and concession labor services. These agreements were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual obligations.

FILED DATE: 12/10/2018 11:59 AM   2017CH12838

81.     An express contract-implied-in-fact was created at the time Defendants required Plaintiff to provide her biometrics whereby Plaintiff agreed to provide such biometrics in exchange for, and with the understanding that she would receive, a legally-compliant work environment that prevented the unauthorized collection, use, storage, and/or dissemination of her biometrics.

82.     An express contract-implied-in-fact was also created at the time Defendants Heartland and Cross Match, the Biometric Technologists, required Plaintiff to scan her biometrics into their technology, whereby Plaintiff and the Class agreed to provide their irreplaceable biometrics with the understanding that Heartland and Cross Match would act reasonably in disclosing, and certainly not concealing, all material facts necessary for Plaintiff and the Class to render informed, written consent.

83.     Defendants had sole and broad discretion in how to perform their obligations. Thus, Defendants also breached the implied duty of good faith and fair dealing by unfairly withholding information about their biometric program and technology, information that was solely in their possession and control, despite requiring Plaintiff to participate in the same.

84.     Plaintiff and the Class performed all conditions, covenants, obligations, and promises owed to Defendants, including working when required and providing Defendants their sensitive and confidential biometrics.

85.     As a result of Defendants' breaches of contract and the covenant of good faith and fair dealing, Plaintiff and the Class members did not receive the full benefit of their bargain.

86.     Plaintiff and the Class have also suffered actual damages resulting from the dissemination and exposure of their biometrics to third parties and remain at risk of suffering additional damages in the future.

FILED DATE: 12/10/2018 11:59 AM   2017CH12838

87.     Plaintiff and the Class were damaged in an amount at least equal to the difference in value between that which they reasonably expected and Defendants' partial, deficient and/or defective performance.

88.     Plaintiff and the Class have also suffered actual damages resulting from their attempts to ameliorate the effect of the breach.

89.     Accordingly, with respect to Count IV, Plaintiff, or behalf of herself and the proposed Class, prays for an award of actual and compensatory damages incurred as a result of Defendants' breach of contract, in amounts to be determined at trial.

## COUNT V
### Negligence
### (On behalf of Plaintiff and the Class)

90.     Plaintiff hereby incorporates the foregoing allegations as if fully set forth herein.

91.     To the extent that a finder of fact concludes that Defendants did not intentionally withhold information from Plaintiff and the Class relating to their biometric timekeeping program, Defendants were nonetheless careless and negligent in their failure to act reasonably with regards to their biometric program.

92.     As more fully alleged *supra*, special relationships existed between Plaintiff and the Class and Defendants, both respectively and collectively, which gave rise to various duties and obligations concerning the biometric timekeeping and biometric data at issue because Defendants had full control over such biometric program, technology, policies, and procedures relative to Plaintiff's limited knowledge and power.

93.     Indeed, Defendants' position relative to Plaintiff in terms of access to information regarding the workplace, the biometric technology, and their conduct in handling Plaintiff's biometrics, gave rise to a duty for Defendants to act reasonably in the circumstances.

FILED DATE: 12/10/2018 11:59 AM   2017CH12838

94.     Defendants knew, or should have known, of the risks inherent in collecting, storing, using, and disseminating the biometrics of Plaintiff and the Class and owed duties of reasonable care to all individuals whose biometrics were obtained by Defendants.

95.     Defendants Heartland and Cross Match knew that OHM was using their biometric technology and related services to collect, store, transmit, and use the sensitive biometric data of employees, but were nonetheless careless and negligent in failing to take reasonable steps to ensure such conduct met the applicable standard of care for biometric data privacy, despite their extensive efforts to profit from the same conduct.

96.     Defendants breached their duties to Plaintiff and the Class with regards to biometric privacy by, among other things, failing to implement a BIPA-compliant biometric system with reasonable technical, administrative, and physical safeguards and procedures.

97.     As a direct and proximate result of Defendants' conduct in failing to act reasonably with regards to their biometric program, Plaintiff and the Class have suffered pecuniary and non-pecuniary injury, including lost wages and diminution in the value of their biometrics caused by Defendants' exposure of such information to third-parties.

98.     Accordingly, with respect to Count V, Plaintiff, or behalf of herself and the proposed Class, prays for an award of actual and compensatory damages in an amount to be determined at trial.

<u>**COUNT VI**</u>
**Intrusion Upon Seclusion**
**(On behalf of Plaintiff and the Class)**

99.     Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

100.    Defendants have intentionally and unlawfully intruded upon Plaintiff's and the Class' biometric information and data derived therefrom.

20

FILED DATE: 12/10/2018 11:59 AM   2017CH12838

101. Such biometrics, as contemplated by BIPA, constitutes private affairs.

102. Thus, Defendants have unlawfully intruded upon Plaintiff's and the Class's private affairs by failing to inform them of the purpose and length of term for which they intended to retain and use their biometrics, despite the fact that such disclosures are required by law.

103. Defendants have also intentionally intruded upon Plaintiff's and the Class' private affairs by disseminating their biometrics to third parties without knowledge and consent.

104. Plaintiff and the Class had a reasonable expectation that any entity seeking to collect their biometrics, and certainly their employers, would be doing so legally.

105. A reasonable person would find Defendants' intrusions highly offensive and objectionable, and Plaintiff and the Class did find, and continue to find, Defendants' conduct to be both highly offensive and objectionable.

106. These repeated intrusions caused damages to Plaintiff and the Class members in the form of, among other things, mental anguish and pecuniary harms.

107. Accordingly, with respect to Count VI, Plaintiff, or behalf of herself and the proposed Class, prays for an award of actual and compensatory damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the proposed Class, respectfully requests that this Court enter an Order:

a. Certifying the Class as defined above, appointing Plaintiff as class representative and the undersigned as class counsel;

b. Declaring that Defendants' actions, as set forth herein, violate the BIPA;

FILED DATE: 12/10/2018 11:59 AM   2017CH12838

c.   Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with the BIPA requirements for the capture, collection, storage, and use of biometric identifiers and biometric information, including an injunction requiring Defendants to permanently destroy all biometric information of Plaintiff and of Class members in their possession and compensation in an amount to be determined at trial for the commercial value of Plaintiff's biometric information;

d.   Awarding statutory damages of $5,000 for each willful and/or reckless violation of the BIPA, pursuant to 740 ILCS 14/20(1);

e.   Awarding statutory damages of $1,000 for each negligent violation of the BIPA, pursuant to 740 ILCS 14/20(3);

f.   Awarding reasonable attorneys' fees, costs, and other litigation expenses pursuant to 740 ILCS 14/20(3);

g.   Awarding pre- and post-judgment interest, as allowable by law; and

h.   Awarding such further and other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: December 10, 2018                    Respectfully Submitted,

                                            SYLVIA KOMORSKI, individually and on
                                            behalf of a class of similarly situated individuals

                                            By:   /s/ Jad Sheikali
                                                  *One of Plaintiff's Attorneys*

22

FILED DATE: 12/10/2018 11:59 AM   2017CH12838

Myles McGuire
Jad Sheikali
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
jsheikali@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*

Order                                                          **(Rev. 02/24/05) CCG N002**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Komorski

v.

OHM, et al.

No. 17-CH-12838

**ORDER**

This Matter coming before the Court, for status on Plaintiff's service of additional Parties, the court being fully advised,

         IT IS HEREBY ORDERED:

1) Case is continued for subsequent status hearing on February 4, 2019 at 10.15 a.m.

Attorney No.: 56618

Name: Jad Sheikali

Atty. for: π

Address: 55 West Wacker, 9th Fl.

City/State/Zip: Chicago, IL 60601

Telephone: Jsheikali@rcrcplaw.com

Judge Pamela McLean Meyerson

**ENTERED:**

DEC 17 2018

Circuit Court – 2097

Dated: _____, _____

_____
Judge                        Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS COUNTY
DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| SYLVIA KOMORSKI, individually and on behalf of similarly situated individuals, | |
| *Plaintiff*, | No. 2017-CH-12838 |
| v. | |
| OHM CONCESSION GROUP, LLC, an Illinois limited liability company; OHM CHICAGO, LLC, an Illinois limited liability company; GLOBAL PAYMENTS INC., a Georgia corporation; and CROSS MATCH, INC., a Delaware corporation, | Hon. Pamela Meyerson |
| *Defendants*. | |

## AGREED ORDER FOR EXTENSION OF TIME

This matter, coming before the Court by the agreement of Plaintiff Sylvia Komorski ("Plaintiff") and Defendant Global Payments Inc., *improperly named*, ("Global"), and the Court being fully advised and for good cause shown:

## RECITALS

1.      On December 10, 2018, this Court granted Plaintiff leave to file a Third Amended Class Action Complaint substituting Cross Match Technologies, Inc. ("Cross Match") in for defendant HID Global Corporation.

2.      Per the December 10, 2018 Order, Cross Match's Responsive Pleading to Plaintiff's Third Amended Complaint is due on or before January 25, 2019. On December 19, 2018, counsel for Global requested an extension of time to January 25, 2019 to file a Responsive Pleading.

3.      Counsel for Plaintiff Agrees to Global's request for extension.

1

4. This Agreed Order is brought in good faith and not for any impermissible purpose or to cause undue delay. All Parties have been notified of this Agreed Order and Agree to its filing.

**IT IS HEREBY ORDERED THAT**

1. Defendant Global Payments Inc., *improperly named,*'s Responsive Pleading to the Third Amended Complaint is due on or before January 25, 2019; and

2. The Status Hearing currently set for February 4, 2019 at 10:15 a.m. Stands.

ENTER

Judge ~~Pamel~~ ~~~ Meyerson

Dated_____     _____ **JAN 0 4 2019** _____

Hon. Pamela Meyerson
Circuit

Prepared by:

Jad Sheikali
MCGUIRE LAW, P.C. (#56618)
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: 312) 893-7002
jsheikali@mcgpc.com

*One of the Attorneys for Plaintiff and the Putative Class*

Ethan E. White
3 Grant Square, Suite 268
Hinsdale IL, 60521
Tel: (630) 984-0339
ewhite@emerlawltd.com

*Counsel for Defendant Global Payments Inc.,* improperly named

# EXHIBIT 2

**Lally, Kathleen (CH)**

| | |
|---|---|
| **From:** | Jad Sheikali <jsheikali@mcgpc.com> |
| **Sent:** | Monday, December 10, 2018 1:49 PM |
| **To:** | Lally, Kathleen (CH) |
| **Subject:** | Re: Komorski v. OHM, et al., 17-CH-12838 |
| **Attachments:** | Komorski OHM TAC FS.pdf |

File-stamped TAC is attached.

Jad

On Mon, Dec 10, 2018 at 11:49 AM Jad Sheikali <jsheikali@mcgpc.com> wrote:

Hi Kate,

Please find attached the Agreed Order that was entered today, dismissing HID Global and providing Crossmatch until 1/25/19 to respond. I will be filing the TAC today, and I will provide you with a file-stamped copy as soon as available.

Best,

Jad

On Fri, Dec 7, 2018 at 12:42 PM <Kathleen.Lally@lw.com> wrote:

Thanks very much. Have a nice weekend.

**From:** Jad Sheikali <jsheikali@mcgpc.com>
**Sent:** Friday, December 7, 2018 12:40 PM
**To:** Lally, Kathleen (CH) <Kathleen.Lally@lw.com>
**Subject:** Re: Komorski v. OHM, et al., 17-CH-12838

Kate,

Thanks for getting back to me on this. I will go ahead and revise the Agreed Order so that Cross Match is not characterized as a Party, and I will also provide Cross Match until January 25, 2019 to respond.

I will have the Agreed Order taken to the Judge's clerk today or Monday, and I'll circulate file-stamped copies as soon as available.

1

# EXHIBIT 3



# Detail by Entity Name

Foreign Profit Corporation

CROSS MATCH TECHNOLOGIES, INC.

**Filing Information**

| | |
|---|---|
| **Document Number** | F02000002124 |
| **FEI/EIN Number** | 65-0637546 |
| **Date Filed** | 04/29/2002 |
| **State** | DE |
| **Status** | ACTIVE |
| **Last Event** | CANCEL ADM DISS/REV |
| **Event Date Filed** | 11/14/2006 |
| **Event Effective Date** | NONE |

**Principal Address**

3950 RCA BOULEVARD, SUITE 5001
PALM BEACH GARDENS, FL 33410

Changed: 02/01/2005

**Mailing Address**

3950 RCA BOULEVARD, SUITE 5001
PALM BEACH GARDENS, FL 33410

Changed: 02/01/2005

**Registered Agent Name & Address**

CORPORATION SERVICE COMPANY
1201 HAYS STREET
TALLAHASSEE, FL 32301-2525

Name Changed: 04/06/2006

Address Changed: 04/06/2006

**Officer/Director Detail**

**Name & Address**

Title SECRETARY, VICE PRESIDENT

HUTTON , KATHRYN
3950 RCA BOULEVARD, SUITE 5001
PALM BEACH GARDENS, FL 33410

Title CEO, Director

Agostinelli, Richard
3950 RCA BOULEVARD, SUITE 5001
PALM BEACH GARDENS, FL 33410

Title CFO

Cahill, Jerry
3950 RCA BOULEVARD, SUITE 5001
PALM BEACH GARDENS, FL 33410

**Annual Reports**

| Report Year | Filed Date |
| --- | --- |
| 2016 | 05/03/2016 |
| 2017 | 05/31/2017 |
| 2018 | 05/21/2018 |

**Document Images**

| | |
| --- | --- |
| 05/21/2018 -- ANNUAL REPORT | View image in PDF format |
| 05/31/2017 -- ANNUAL REPORT | View image in PDF format |
| 05/03/2016 -- ANNUAL REPORT | View image in PDF format |
| 03/23/2015 -- ANNUAL REPORT | View image in PDF format |
| 04/28/2014 -- ANNUAL REPORT | View image in PDF format |
| 04/24/2013 -- ANNUAL REPORT | View image in PDF format |
| 05/08/2012 -- ANNUAL REPORT | View image in PDF format |
| 04/14/2011 -- ANNUAL REPORT | View image in PDF format |
| 02/22/2010 -- ANNUAL REPORT | View image in PDF format |
| 01/14/2009 -- ANNUAL REPORT | View image in PDF format |
| 04/01/2008 -- ANNUAL REPORT | View image in PDF format |
| 03/05/2007 -- ANNUAL REPORT | View image in PDF format |
| 11/14/2006 -- REINSTATEMENT | View image in PDF format |
| 04/06/2006 -- Reg. Agent Change | View image in PDF format |
| 02/01/2005 -- ANNUAL REPORT | View image in PDF format |
| 02/17/2004 -- ANNUAL REPORT | View image in PDF format |
| 02/25/2003 -- ANNUAL REPORT | View image in PDF format |
| 04/29/2002 -- Foreign Profit | View image in PDF format |

Florida Department of State, Division of Corporations